**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| SANDRA WILES, CELESTINE WALLACE, and DEANDRA SMITH, individually, and on behalf of all others similarly situated, | ) ) ) ) | Case No. |
| | ) | **CLASS ACTION COMPLAINT AND** |
| Plaintiffs, | ) | **JURY DEMAND** |
| | ) | |
| vs. | ) ) | |
| EMR ADVANCED RECYCLING, LLC, | ) ) | |
| Defendant. | ) ) | |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1.     Plaintiffs, Sandra Wiles and Deandra Smith, on behalf of themselves and all others similarly situated, bring this putative class action against EMR Advanced Recycling, LLC (hereinafter the "Defendant"), which operates and maintains the scrapyard located at 1400 South Front Street, Camden, New Jersey and an associated facility located at 1500 South 6th Street, Camden, New Jersey (hereinafter referred to collectively as the "Facility").

2.     Through its operation and maintenance of the Facility, Defendant has released, and continues to release overwhelming and widespread noxious odors and air particulates in the form of fugitive dust, soot, smoke, debris, and fallout (collectively, the "Emissions") that invade Plaintiffs' residential properties, and similarly situated residential properties, causing property damages through private nuisance, public nuisance, negligence, and trespass.

**PARTIES**

3.     At all times relevant hereto, Plaintiff Sandra Wiles is an individual citizen of New Jersey that rents and resides at her home located at 703A Ferry Ave., Camden, New Jersey.

1

4.     At all times relevant hereto, Plaintiff Celestine Wallace is an individual citizen of New Jersey that owns and resides at her home located at 711 Walnut St., Camden, New Jersey.

5.     At all times relevant hereto, Plaintiff Deandra Smith is an individual citizen of New Jersey that owns and resides at her home located at 1741 S. 4th St., Camden, New Jersey.

6.     Defendant and its agents have at all times relevant hereto owned, operated, and/or maintained the scrapyard facility located at 1400 S. Front St., Camden, New Jersey and an associated facility located at 1500 South 6th Street, Camden, New Jersey.

7.     Defendant EMR Advanced Recycling, LLC, is a foreign limited liability company organized under the laws of Delaware, registered to do business in New Jersey and identified through public sources as the owner, operator, and/or entity exercising control over the Facility.

8.     Defendant is at least a citizen of Delaware through one of its members.

9.     Defendant, including its predecessors and agents, maintains and operates the Facility and has exercised control and ownership over the Facility at all relevant times hereto.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a)(1).

11.     This Court has original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). CAFA jurisdiction is appropriate because there are 100 or more Class Members and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs. Additionally, under CAFA, Defendant is a citizen of a different state from at least one Plaintiff, establishing minimal diversity.

12.     The Court has personal jurisdiction over Defendant, who has sufficient minimum contacts with the State of New Jersey, because it regularly conducts substantial business in New

Jersey through its operation and maintenance of the Facility, and Plaintiffs' claims arise through such contacts with the forum state.

13.  Exercising personal jurisdiction over Defendant for its contacts satisfies due process and does not offend traditional notions of fair play and substantial justice because Defendant has purposefully availed itself of the laws of the State of New Jersey and it benefits by regularly conducting business through its industrial operations in the state.

14.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events, acts, and/or omissions giving rise to Plaintiffs' claims took place in this judicial District, and because much, if not all, of the property that is the subject of this action is situated in this judicial District.

## FACTUAL ALLEGATIONS

15.  Defendant owns and operates a scrap metal recycling facility located at 1400 South Front Street, Camden, New Jersey 08104 and an associated facility located at 1500 South 6th Street, Camden, New Jersey 08104.

16.  Defendant's Facility receives ferrous and non-ferrous metal, vehicles, batteries, appliances, and aluminum.[1]

17.  Defendant's Facility utilizes a hammermill shredder to break down larger scrap metal pieces for further processing.

18.  Scrap metal recycling facilities like Defendant's process scrap by sorting and stockpiling materials, loading and conveying materials into a hammermill shredder that breaks them apart into a size suitable for further processing, then conveying shredded materials through various separating mechanisms to separate ferrous and non-ferrous metal using magnetic and/or

---

[1] https://us.emrlocal.com/yards/emr-Camden-scrap-metal

3

eddy current.[2] The recovered scrap metals are then later sold or further processed by mills, foundries, smelters, and/or metal brokers.

19.    Auto and scrap metal shredders like Defendant's are a known source of excess emissions of air pollutants because of the significant amount of non-metal materials, such as plastics, paints, sealants, rubbers, and fluids contained in the scrap.[3] These non-metal materials are vaporized by the extreme heat generated by the shredding process, and are released as fugitive air emissions in the form of Volatile Organic Compounds (VOCs), particulate matter, and other hazardous air pollutants including lead, zinc, cadmium, mercury, and other pollutants.

20.    Failure to remove and recover fluids and other potentially hazardous materials such as gasoline, diesel fuel, oil, antifreeze, brake fluid, transmission fluid, lead-acid batteries, vehicle air bags, capacitors, transformers, mercury-containing switches and light ballasts, tires, compressed gas cylinders, and refrigerant appliances may also create a risk of fires and explosions in the shredding, stockpiling, and recycling processes.[4]

21.    Defendant's Facility is surrounded by residential properties.

22.    Plaintiffs reside within the proposed Class Area.

23.    On frequent, recurrent, and continuing occasions too numerous to list herein, Plaintiffs' properties have been and continue to be physically invaded by noxious Emissions.

24.    The noxious Emissions which entered Plaintiffs' properties originated from Defendant's Facility, where they are generated as a result of Defendant's scrap metal processing operations.

25.    These fugitive emissions caused by Defendant's Facility have been and continue to be dispersed across public and private land in the Class Area.

---

[2] https://www.epa.gov/system/files/documents/2021-07/metalshredder-enfalert.pdf
[3] *Id.*
[4] *Id.*

26.     A properly designed, operated, and maintained scrap metal recycling facility will adequately capture, remove, and dispose of noxious emissions to prevent the release thereof into the ambient air as fugitive emissions.

27.     A properly designed, operated, and maintained scrap metal recycling facility will adequately capture, remove, and dispose of non-metal fluids and materials to prevent the vaporization and subsequent emission thereof into the ambient air as fugitive emissions.

28.     A properly designed, operated, and maintained scrap metal recycling facility will not emit odor, dust, soot, smoke, debris, and fallout into the ambient air as fugitive emissions.

29.     Defendant is required to control its Emissions by, among other things, operating and maintaining the Facility in a manner that adequately captures, controls, and mitigates fugitive Emissions to prevent them from escaping into the ambient air surrounding the Facility and implementing other reasonably available mitigation, elimination, and control systems at the Facility.

30.     Defendant has failed to install, maintain, operate, develop, and/or implement adequate mitigation strategies, processes, technology, and equipment to control its Emissions from the Facility and prevent those Emissions from invading the homes and properties of the Plaintiffs and the putative Class.

31.     Defendant's failures to prevent its offsite Emissions include, but are not limited to:

a.  Operating and maintaining inadequate systems for processing scrap metal;

b.  Operating and maintaining a scrap metal recycling process that inadequately captures, controls, and/or mitigates noxious Emissions;

c.  Failing to adequately treat and filter the exhaust produced through its industrial operations prior to emitting it into the ambient air;

d.  Failing to develop and/or implement an adequate particulate prevention plan;

e.  Failing to utilize other odor, dust, soot, smoke, debris, and fallout elimination, and mitigation measures and technology available to Defendant;

f. Failing to properly store and stockpile scrap and processed scrap metal and non-metals to prevent the release of Emissions into the ambient air;

g. Failing to adequately enclose the stored stockpiles of scrap and processed scrap at the Facility to prevent the release of Emissions into the ambient air;

h. Failing to adequately screen, remove, collect, and/or dispose of non-metals from its materials to prevent the release of offsite Emissions through the Facility's shredding and processing of scrap metal;

i. Failing to adequately implement, maintain, and/or operate a fire suppression system at the Facility to prevent the release of Emissions into the ambient air;

j. Failing to adequately screen, remove, collect, and/or dispose of batteries and other highly flammable substances from its materials to prevent combustion and prevent the release of offsite Emissions through the Facility's shredding and processing of scrap metal; and,

k. Other failures that have yet to be discovered.

32. Defendant has failed to follow proper scrapyard metal recycling practices to prevent the noxious Emissions from invading the homes and properties of the Plaintiffs and the putative Class.

33. The Emissions from Defendant's Facility are noxious and offensive to the senses.

34. On multiple occasions, Plaintiffs' properties have been physically invaded by noxious Emissions as a result of Defendant's repeated failures to properly maintain and operate the Facility, and as the result of fires and explosions occurring at Defendant's Facility.

35. On January 29, 2021, a large fire occurred at Defendant's Facility shredder located at 1400 South Front Street releasing smoke and metallic odors into the ambient air. As a result of the fire, a neighborhood school, the Sacred Heart School, evacuated and closed due to the emission of smoke and odors.

36. On February 27, 2021, Defendant's 1400 South Front Street shredder experienced a fire caused by "automotive fluff" or "automotive shredder residue," releasing smoke into the ambient air.

6

37.     On February 28, 2022, nearly a year after the previously reported fire, a scrapyard fire at Defendant's 1500 South 6th Street location sent plumes of black smoke in the air.[5] The fire was reported to have begun in a pile of "shredded residue."



[Side view of February 28, 2022 fire at Defendant EMR Advanced Recycling, LLC's Facility][6]

38.     On July 21, 2022, the City of Camden Fire Department received a report of a "small fire" at Defendant's 1400 South Front Street shredder.

39.     On July 22, 2022, the City of Camden Fire Department received another report of a "facility fire" that "[m]ay have been a lithium battery that was on fire" at Defendant's 1500 South 6th Street location.

40.     On October 18, 2022, an incident of "heavy odor" and smoke was reported to have come from Defendant's 1400 South Front Street shredder. Residents near Defendant's Facility were advised by a local nonprofit to contact Defendant's representative if they were "uncomfortable staying in [their] home tonight due to the smoke."[7] Residents were offered accommodations by Defendant to stay at a local hotel in downtown Camden.

---

[5] https://www.courierpostonline.com/story/news/2022/02/28/fire-emr-scrapyard-sends-smoke-billowing-into-camden-neighborhoods-air-pollution-recycling-industry/9321271002/
[6] *Id.*
[7] https://www.courierpostonline.com/story/news/local/2022/10/19/fluff-fire-ignites-emr-foul-smell-air-camden-nj/69573067007/

41.    On July 29, 2024, Defendant reported yet another fire at 1500 South 6th Street. General Counsel for Defendant, Michael Gross, provided a statement to the press that "The fire occurred in our light iron pile due to the suspected presence of a lithium-ion battery."[8]

42.    On February 21, 2025, a four-alarm fire occurred at Defendant's 1400 South Front Street shredder, which sent billowing black smoke into the ambient air of Camden for several hours.[9]



[Overhead view of February 21, 2025 fire at Defendant EMR Metal Recycling, LLC's Facility]

43.    As a result of Defendant's February 21, 2025, fire, more than 100 families in the neighborhood surrounding its Facility were dislodged and forced to evacuate the area.[10]

44.    The February 21, 2025 fire created a "thick smoke that enveloped the city and could

[8] https://www.tapinto.net/towns/camden/sections/police-and-fire/articles/emr-recycling-fire-quickly-extinguished-by-camden-firefighters
[9] https://www.cbsnews.com/philadelphia/news/lithium-ion-battery-caused-junkyard-fire-camden-emr-metal-recycling/
[10] https://www.camdencounty.com/mayor-negotiates-6-7-million-agreement-for-the-residents-of-waterfront-south-with-emr/

be seen as far as 15 miles away."[11] Camden City Commissioners issued a voluntary shelter in place order that was lifted on February 22, 2025 at noon. The Commissioners stated that the City Fire Department was still addressing smoke spots 20 hours after the fire began. In the public statement, the City further condemned Defendant's actions and that "This kind of fire can never happen again at EMR, and we are going to ensure that it never does."

45.    Following and as a direct result the February 21, 2025 fire, the City of Camden and Defendant entered into a Memorandum of Understanding on August 15, 2025.

46.    As part of the Memorandum of Understanding between the City of Camden and Defendant, Defendant was required to spend approximately $3 million installing a fire suppression system, improve its fire prevention measures, improve its emergency training, reimburse the Camden City Fire Department for damaged equipment, and cease all operations at its 1500 South Sixth Street scrapyard in Camden. Defendant was further required to commit an initial investment of $1 million to fund "essential needs" in the community and make annual donations of $450,000 to local community foundations.

47.    After investigating the February 21, 2025 fire at its Facility, Defendant stated that it was likely caused by a lithium-ion battery.[12]

48.    On February 26, 2026, another fire erupted at Defendant's Facility.[13] During the extinguishing of the fires, neighbors of Defendant's Facility were urged to avoid the area.

---

[11] https://www.camdencounty.com/statement-from-commissioners-regarding-the-fire-in-south-camden-city-at-the-emr-facility/https://www.camdencounty.com/statement-from-commissioners-regarding-the-fire-in-south-camden-city-at-the-emr-facility/

[12] https://www.cbsnews.com/philadelphia/news/lithium-ion-battery-caused-junkyard-fire-camden-emr-metal-recycling/

[13] https://www.msn.com/en-us/weather/topstories/firefighters-battle-another-fire-at-emr-junkyard-in-camden-nj-on-thursday/ar-AA1X9UsL?ocid=BingNewsSerp



[Overhead view of February 26, 2026 fire at Defendant EMR Metal Recycling, LLC's Facility]

49.     Defendant's Facility has caused numerous fires and explosions, which in turn have released noxious Emissions in the form of soot, smoke, debris, and fallout into the neighboring properties and have at times forced owner-occupants and renters of residential property within the putative Class Area to evacuate their homes.

50.     Excluding and in addition to the above fires and explosions, Defendant's Facility has released noxious Emissions as a result of its improper operation and maintenance of the Facility on occasions too numerous to list herein.

51.     Defendant's fires and Emissions were preventable through reasonable care and diligence.

52.     As a result of Defendant's negligent operation and/or maintenance of its Facility, including but not limited to the failure to collect, remove, and dispose of flammable materials and conditions within its scrap metal processing, Defendant has released noxious Emissions and has caused fires.

53.     As a foreseeable, direct, and proximate result of Defendant's fires, noxious Emissions have physically invaded Plaintiffs' properties on numerous occasions, thereby causing damages.

54.     As a foreseeable, direct, and proximate result of Defendant's failures to properly operate and maintain its Facility, noxious Emissions have physically invaded Plaintiffs' properties on numerous occasions, thereby causing damages.

55.     Numerous households have contacted Plaintiffs' counsel documenting the Emissions they attribute to Defendant's Facility.

56.     Below is a small sampling of the factual allegations made by putative class members to Plaintiffs' counsel, demonstrating that the Facility is the source and cause of the fugitive Emissions, which have caused damages to neighboring properties.

   a. Plaintiff Sandra Wiles stated that "The air quality was really bad, couldn't use my air conditioning or open windows and it affected my asthma. Couldn't' take my pets outdoors for bathroom purposes. Had to stay with my sister for 3 days."

   b. Plaintiff Celestine Wallace indicated that "The air inside my home became unbearable at times, forcing me to take costly measures to protect my health and property. I have had to remodel parts of my home, install new windows, and invest in air purifiers in order to make the air inside my home safer to breathe. The situation has caused me significant stress, financial burden, and concern for my long-term health and well-being. No resident should have to live under these conditions or bear these costs due to environmental hazards in their neighborhood."

   c. Plaintiff Deandra Smith reported that "Soot has accumulated on step and roof. We were evacuated in Feb 2025 for the big fire had to stay at hotel."

   d. Putative Class Member Amarilys Miranda stated that "We usually smell burning metal in the mornings the smell is strong to the point no one should be outside more than 5-10 minutes at a time and when its warm outside its 10x worse. I noticed soot on our streets and on the cars at times when its dry/hot weather. I don't let my girls play outside when its bad!"

   e. Putative Class Member Mayra Tomas reported that "The odor was so strong that I had to stay indoors my porch had soot also my porch windows had to be cleaned."

11

57.     Defendant's well documented pattern of failing to control its Emissions is further demonstrated by the extensive administrative enforcement record of the Facility, verified by independent government investigations by the New Jersey Department of Environmental Protection (NJDEP).

58.     On July 23, 2020, Defendant was issued a notice of violation (NOV) by NJDEP for failing to obtain a preconstruction permit for a significant air contaminant source emission. The violation was described by NJDEP as follows:

    a.  "You installed a material handling source operation that emits one or more air contaminants directly to the outdoor air without first obtaining a Preconstruction Permit for the significant source operation. Specifically, you installed material handling equipment at the Kaighn Ave staging yard area of your facility, including but not limited to, front end loaders, industrial claw grabber, and industrial magnet that process in excess of 50 pounds of scrap metal (and/or non-metal scrap fluff) in any one hour."

59.     On December 7, 2020, Defendant was found to have violated numerous sections of the New Jersey Administrative Code. NJDEP found that Defendant's Facility "failed to store residues separately from recyclable material and in a manner that prevents run-off, leakage or seepage from the residue storage area into, on or around the soil of the residue storage area." Defendant was cited for the same violation again on December 9, 2020 and December 15, 2020.

60.     On December 8, 2020, Defendant was issued an NOV by NJDEP for failing to obtain a solid waste facility (SWF) permit prior to constructing and operating a solid waste facility on the Facility's premises, including failing to submit and obtain the Department's approval for a quality control plan and a sampling and analytical plan.

61.     On January 13, 2021, Defendant was found to have violated numerous sections of the New Jersey Administrative Code. NJDEP found that Defendant's Facility "failed to store residues separately from recyclable material and in a manner that prevents run-off, leakage or seepage from the residue storage area into, on or around the soil of the residue storage area."

62.     On March 12, 2021, Defendant was found to have violated numerous sections of the New Jersey Administrative Code. NJDEP found that Defendant's Facility "failed to ensure an adequate water supply and fire-fight equipment were readily available to extinguish any fires." Defendant's Facility and its related activities also "were not in conformance with municipal ordinances, including, but not limited to ordinances concerning ingress and egress, traffic patterns, parking, signage, operational hours, noise, dust, and structure height." Defendant also stored residues for more than six months, violating N.J.A.C. 7:26A- 4.1(a)2.

63.     On June 25, 2021, Defendant was issued an NOV by NJDEP for failing to obtain a solid waste facility permit prior to constructing and operating a solid waste facility on the Facility's premises. "Specifically, facility has stored an ASR pile on site for longer than 6 months. Photographic evidence was taken from inside and outside the facility." Defendant also stored residues for more than six months, violating N.J.A.C. 7:26A- 4.1(a)2.

64.     In relation to the fires caused by Defendant's Facility on November 29, 2020 and January 29, 2021, Defendant entered into a settlement agreement with NJDEP on October 25, 2023 and was assessed a $7,600 penalty and a $89,750 fine from the County Health Department Hazmat division.[14] Defendant's violations were described as:

a.   "On January 29, 2021, you caused the release of one or more air contaminants, in a quantity or concentration which posed a potential threat to the public health, welfare or the environment or may have reasonably resulted in citizen complaints and failed to notify the Department immediately."

b.   "On November 29, 2020, you caused the release of one or more air contaminants, in a quantity or concentration which posed a potential threat to the public health, welfare or the environment or may have reasonably resulted in citizen complaints and failed to notify the Department immediately."

c.   "You permitted smoke and odors from the shredded material fluff pile fire on January 29, 2021 to be emitted into the outdoor atmosphere in quantities which resulted in air pollution."

---

[14] https://www.tapinto.net/towns/camden/sections/business-and-finance/articles/emr-fined-97k-after-january-fire-sent-heavy-smoke-into-camden-neighborhoods

13

65.    Following the numerous fires, a dozen over the last five years, the State of New Jersey and the NJDEP filed a civil lawsuit on January 12, 2026, alleging public nuisance counts against Defendant and its other EMR affiliates for the frequent smoke, fires, and air pollution emitted from its Facility and other facilities in New Jersey.

66.    Defendant's Facility has repeatedly emitted objectionable noxious odors and fugitive dust, soot, debris, smoke, and fallout that were detectable outside the bounds of its property.

67.    The Facility's noxious Emissions have caused negative impacts to its neighbors, including lost use and enjoyment of private residential property and adverse impacts on residential property values.

68.    Defendant has repeatedly been cited by regulators for failing to operate the Facility in accordance with its duty to control fugitive Emissions, discharging these Emissions into the surrounding community.

69.    Defendant's noxious Emissions are continuing; Defendant has failed to cease the noxious Emissions, despite knowledge, and despite the Emissions being abatable with reasonable care and diligence.

70.    The noxious Emissions from the Facility are offensive, would be offensive to a reasonable person of ordinary health and sensibilities, and have caused property damage, including by interfering with the ability of Plaintiffs and the Class to use and enjoy their homes and property.

71.    Plaintiffs and the putative class are a limited subset of individuals in Camden and the proposed Class Area, that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition.

14

72.     The proposed Class Area is home to a wide range of commercial and recreational enterprises, including but not limited to retail trade, recreational areas, dining, healthcare and social services, education, and ministry.

73.     Members of the public, including but not limited to business owners, employees, commuters, visitors, customers, patients, clients, students, and worshippers, have experienced and been harmed by the fugitive noxious emissions from the Facility into public spaces; however, unlike Plaintiffs and the putative class, members of the public who are outside of the Class Definition have not suffered damages of the same kind, in the form of adversely impacted property values and/or loss of use and enjoyment of their private property.

74.     The invasion of Plaintiffs' property and that of the Class by noxious odors and air particulates has negatively impacted the value of and interfered with the use and enjoyment of those properties, resulting in property damages.

## CLASS ALLEGATIONS

### *Class Definition*

75.     Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seek to represent a Class of persons defined as:

**All owner-occupants and renters of residential property residing at any time within the applicable statute of limitations in the following geographical area:**

> **Starting at Spruce Street and S 9th Street, proceed south on S 9th Street. At Sycamore Street continue east to S 10th Street. Follow S 10th Street south to Mechanic Street. Go east on Mechanic Street and then continue south on S 10th Street. At Bulson Street go west and continue to the railroad track following them northeast to Jefferson Street. Proceed east on Jefferson Street to the Delaware River. Follow the river front north to Spruce Street. Follow Spruce Street west to the point of origin.**

**The Class Area is further depicted in the map below:**



The definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members").

76.     Plaintiffs further propose the following <u>Evacuation Subclass</u>, which they seek to represent, defined as:

**All owner-occupants and renters of residential property residing at any time within the applicable statute of limitations in the Class Area that have been forced to evacuate their homes in response to fires at Defendant's Facility.**

77.     This case is properly maintainable as a class action pursuant to an in accordance with Federal Rule of Civil Procedure 23 in that:

      a.     The Class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

      b.     There are substantial questions of law and fact common to the class including those set forth in greater particularity herein;

16

c.   Questions of law and fact such as those enumerated below, which are all common to the class, predominate over any questions of law or fact affecting only individual members of the class;

d.   A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

e.   The relief sought in this class action will effectively and efficiently provide relief to all members of the class;

f.   There are no unusual difficulties foreseen in the management of this class action; and,

g.   Plaintiffs, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

## A.   Numerosity

78.   Based on available data, there are thousands of residential households within the Class Area and therefore is so numerous that joinder is impracticable.

## B.   Commonality

79.   Numerous common questions of law and fact predominate over any questions affecting individual Class Members, including, but not limited to the following:

a.   Whether and how Defendant negligently and knowingly failed to reasonably maintain and operate the Facility to prevent offsite Emissions;

b.   Whether Defendant owed any duties to Plaintiffs;

c.   Which duties Defendant owed to Plaintiffs;

d.   Which steps Defendant has and has not taken to control its Emissions through the maintenance and operation of its Facility;

e.   Whether and to what extent the Facility's Emissions were dispersed over the Class Area;

f.   Whether it was reasonably foreseeable that Defendant's failure to properly maintain and operate the Facility would result in an invasion of Plaintiffs' property interests;

17

g. Whether the degree of harm suffered by Plaintiffs and the Class constitutes a substantial annoyance or interference under an objective legal standard; and,

h. The proper measure of damages incurred by Plaintiffs and the Class.

80. The availability of common proof as to a limited subset of the above questions of law and fact may otherwise permit issue certification under Fed. R. Civ. P. 23(c)(4).

## C. Typicality

81. Plaintiffs have the same interests in this matter as all the other members of the Class and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

82. The claims of Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The claims originate from the same failure of the Defendant to properly repair, maintain and operate the Facility.

83. Class Members have similar injuries to the Plaintiffs as a result of the invasion of their properties by Defendant's release of Emissions causing damage to their properties.

## D. Adequacy of Representation

84. Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class's claims will be prosecuted with diligence and care.

85. Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

86. Plaintiffs live in the Class Area and own or rent property that is subject to the recurring invasion of Emissions originating from Defendant's Facility.

18

87. Plaintiffs have retained the services of counsel who are experienced in complex class action litigation and in particular class actions stemming from the offsite emission of air pollution from industrial facilities.

88. Plaintiffs' counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiffs and all absent Class Members.

**E. Class Treatment is the Superior Method of Adjudication**

89. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

   a. Prosecution of separate actions by or against individual members of the Class would create an unnecessary risk of inconsistent or varying adjudication with respect to individual members of the Class, which may establish incompatible standards of conduct for the party opposing the Class;

   b. Adjudications with respect to individual members of the Class would be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

   c. The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and,

   d. The proposed class action is manageable.

90. Further, class treatment of Plaintiffs' claims is appropriate and necessary to ensure that common relief is available to the Class and that Class Members can vindicate their rights in a single proceeding.

91. Notice can be provided to members of the Class by U.S. Mail and/or publication.

## CAUSE OF ACTION ONE – PRIVATE NUISANCE

92. Plaintiffs restate the allegations of this Complaint as if fully restated herein.

93. The Defendant owed, and continues to owe, a duty to the Plaintiffs and to the Class to prevent and abate the unreasonable interference with, and the invasion of, their private property interests.

19

94. The Emissions which entered the Plaintiffs' and Class's properties originated from the Facility, which was improperly and unreasonably maintained and/or operated by the Defendant.

95. The Plaintiffs and the Class utilize their properties as residences and reside within the Class Area.

96. The noxious Emissions which entered the Plaintiffs' and Class's properties originated from the Defendant's Facility, which is in close proximity to the Class Area.

97. By failing to reasonably design, operate, repair, and maintain its Facility, the Defendant has caused an invasion of the Plaintiffs' and Class's properties by its Emissions on unusually frequent occasions that are too numerous to comprehensively list herein.

98. The noxious Emissions invading the Plaintiffs' and Class's properties are indecent and offensive to individuals with ordinary sensibilities. The noxious Emissions substantially and unreasonably interfere with the Plaintiffs' and Class's enjoyment of life and the ability to use and enjoy their properties. This includes, but is not limited to:

   a) Forcing the Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

   b) Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

   c) Depriving the Plaintiffs and Class Members of the value of their homes and properties;

   d) Causing the Plaintiffs and Class Members embarrassment, inconvenience, and reluctance to invite guests to their homes; and,

   e) Forcing Plaintiffs and Class Members to evacuate their homes entirely for extended periods of time.

99. By failing to reasonably repair, maintain, and/or operate its Facility, the Defendant

has wrongfully, negligently, and knowingly created a foreseeable risk of harm and caused an unreasonable invasion of the Plaintiffs' and Class's properties by noxious odors and air particulates.

100.    Defendant's nuisance is recurring and ongoing.

101.    Defendant's nuisance is abatable.

102.    By failing to reasonably repair, maintain, and/or operate the Facility, thereby causing noxious Emissions to physically invade the Plaintiffs' and Class's properties, the Defendant intentionally, knowingly, recklessly, and/or negligently created a nuisance that substantially and unreasonably interferes with the Plaintiffs' and Class's properties.

103.    The Defendant owed, and continues to owe, a duty to Plaintiffs and the putative Class to prevent and abate the unreasonable interference with the invasion of their private property interests.

104.    As a result of the forgoing misconduct by the Defendant, the Plaintiffs and Class suffered, and continue to suffer, damages to their properties as alleged herein.

105.    The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendant's Emissions, which is ongoing and constitutes a nuisance.

106.    Any social utility that is provided by the Facility is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

107.    The Defendant's substantial and unreasonable interference with the Plaintiffs' and Class's use and enjoyment of their properties constitutes a private nuisance. The Defendant is liable for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

21

## CAUSE OF ACTION TWO – PUBLIC NUISANCE

108.    Plaintiffs restate the allegations of this Complaint as if fully restated herein.

109.    Plaintiffs and the Class utilize their properties as residences and reside within the Class Area.

110.    Plaintiffs and the putative class are a limited subset of individuals in Camden County, and the proposed Class Area, that includes only owner/occupants and renters of residential property who live within the Class Area and fit within the Class Definition.

111.    The Emissions that entered Plaintiffs and the Class's properties originated from Defendant's Facility, which is in close proximity to the proposed Class Area.

112.    The proposed Class Area is home to a wide range of commercial and recreational enterprises, including but not limited to retail trade, dining, recreation, healthcare, education, and ministry.

113.    By failing to reasonably operate, repair, and/or maintain the Facility, Defendant has caused an invasion of Plaintiffs' property by noxious Emissions on frequent occasions that are too numerous to individually list herein.

114.    The noxious Emissions that invade the Plaintiffs' and the Class's properties are indecent and offensive to the Plaintiffs and Class, and they are indecent and offensive to individuals with ordinary sensibilities. The noxious Emissions substantially and unreasonably interfere with the Plaintiffs' and Class's enjoyment of life and their ability to use and enjoy their properties. This includes, but is not limited to:

   a)   Forcing Plaintiffs and Class Members to remain inside their homes and forego the use of their yards, porches, and other spaces, and to generally refrain from outdoor activities;

   b)   Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

22

c)  Depriving the Plaintiffs and Class Members of the value of their homes and properties;

d)  Causing the Plaintiffs and Class Members embarrassment, inconvenience, and reluctance to invite guests to their homes; and,

e)  Forcing Plaintiffs and Class Members to evacuate their homes entirely for extended periods of time.

115.  Due to the Defendant's Facility Emissions, the Plaintiffs and the Class have suffered, and continue to suffer, special harm relating to the use and enjoyment of their lands and properties, and decreased property values.

116.  Separate and apart from the private property damage incurred by the Plaintiffs and the Class, the Defendant's Emissions have substantially interfered with rights common to the general public, including the right to breathe clean air.

117.  The injuries to the Plaintiffs' and Class's properties and the harmed rights associated with those properties are separate and different in kind from the harm caused by Defendant to the public at-large and/or other private individuals not within the Class definition.

118.  As a foreseeable, direct, and proximate result of the forgoing misconduct by the Defendant, the Plaintiffs and the Class have suffered special damages to their properties as alleged herein.

119.  The damages suffered by the Plaintiffs and the Class are uniquely injurious to those parties because they suffer harm relating to the use and enjoyment of their land and property, and decreased property values, which are not harms suffered by the general public.

120.    The general public is also impacted by the Facility's noxious Emissions when they work, worship, commute, study, shop, or engage in recreation in the Class Area, but they suffer no harm to the use and enjoyment of their land or property or adversely impacted property values. The harm to the general public is separate and apart from the harm to private property experienced by Plaintiffs and the Class.

121.    The Plaintiffs and Class Members did not consent to the invasion of their properties by the Defendant's noxious Emissions, which is ongoing and constitutes a nuisance.

122.    Any social utility that is provided by the Facility is patently outweighed by the harm suffered by the Plaintiffs and the Class, who have on frequent occasions been deprived of the full use and enjoyment of their properties and have endured substantial loss in the use and value of their properties.

123.    The Defendant's substantial and unreasonable interference with the Plaintiffs' and Class's use and enjoyment of their properties arises from a public nuisance, from which the Plaintiffs and Class have uniquely suffered. The Defendant is liable for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive relief.

### CAUSE OF ACTION THREE – NEGLIGENCE

124.    Plaintiffs restate the allegations of this Complaint as if fully restated herein.

125.    The Defendant owed, and continues to owe, a duty to the Plaintiffs and to the Class to operate and maintain the Facility in a reasonable manner and to take reasonable steps to prevent and abate the fugitive emission of noxious odors and air particulates from the Facility.

126.    A properly operated and maintained Facility will not emit noxious Emissions into neighboring residential areas.

127.    The Defendant breached its duties by negligently and improperly maintaining and operating the Facility. By failing to properly maintain and operate its Facility, the Defendant failed

24

to exercise the duty of ordinary care and diligence.

128.   Defendant's breach is demonstrated by its extensive administrative violations, and in the following operational failures:

a.   Operating and maintaining inadequate systems for processing scrap metal;

b.   Operating and maintaining a scrap metal recycling process that inadequately captures, controls, and/or mitigates odor and particulate emissions;

c.   Failing to adequately treat and filter the exhaust produced through its industrial operations prior to emitting it into the ambient air;

d.   Failing to develop and/or implement an adequate particulate prevention plan;

e.   Failing to utilize other odor and particulate prevention, elimination, and mitigation measures and technology available to Defendant;

f.   Failing to properly store and stockpile scrap and processed scrap metal and non-metals to prevent the release of odor and particulate emissions into the ambient air;

g.   Failing to adequately enclose the stored stockpiles of scrap and processed scrap at the Facility to prevent the release of Emissions into the ambient air;

h.   Failing to adequately screen, remove, collect, and/or dispose of non-metals from its materials to prevent the release of offsite odors and air particulates through the Facility's shredding and processing of scrap metal;

i.   Failing to adequately implement, maintain, and/or operate a fire suppression system at the Facility to prevent the release of Emissions into the ambient air;

j.   Failing to adequately screen, remove, collect, and/or dispose of batteries and other highly flammable substances from its materials to prevent combustion and prevent the release of offsite Emissions through the Facility's shredding and processing of scrap metal; and,

k.   Other failures that have yet to be discovered.

129.   The Defendant's negligent and improper maintenance of its Facility is the direct and proximate cause of the invasion of noxious Emissions upon the Plaintiffs' and Class's homes, land, and properties on occasions too numerous to mention individually.

25

130.    By failing to maintain and/or operate the Facility, the Defendant negligently, knowingly, intentionally, and recklessly caused the invasion of the Plaintiffs' property by noxious Emissions.

131.    Such invasions by noxious Emissions were the foreseeable result of the foregoing misconduct by the Defendant, and the Plaintiffs and Class suffered damages to their properties as alleged herein. This includes the loss of use and enjoyment of their properties and the diminution of property values, and other losses to be proven at trial.

132.    Defendant could reasonably anticipate that the invasion of the Facility's noxious Emissions upon the Plaintiffs' and the Class's properties would result in property damages in the form of the loss of use and enjoyment and the diminution of property values.

133.    Defendant is liable for all damages arising from such negligence, including compensatory, injunctive, exemplary, and/or punitive relief.

## CAUSE OF ACTION FOUR – TRESPASS

134.    Plaintiffs restate the allegations of this Complaint as if fully restated herein.

135.    Defendant intentionally recklessly, willfully, and/or negligently failed to properly construct, maintain, and/or operate the Facility which caused fugitive Emissions including odors, dust, soot, smoke, debris, and fallout to physically invade upon Plaintiffs' property on occasions too numerous to identify independently.

136.    As a direct and proximate result of Defendant's conduct, fugitive Emissions physically invaded, entered upon, settled upon, and accumulated upon Plaintiffs' property.

137.    It was reasonably foreseeable that Defendant's failure to properly maintain and/or operate the Facility would result in an invasion of Plaintiffs' property by fugitive Emissions.

26

138. The fugitive Emissions that have been and continue to be emitted by Defendant's Facility have invaded and continue to invade Plaintiffs' property and interferes with Plaintiffs' interests in the exclusive possession, use, and enjoyment of their property and constitutes a trespass thereupon.

139. Plaintiffs did not consent to the physical invasion of their property by fugitive Emissions.

140. Defendant's actions resulting in trespass upon Plaintiffs' land were and continue to be intentional, willful, and made with conscious disregard for the rights of Plaintiffs, entitling Plaintiffs and the Class to all damages arising therefrom, including compensatory, injunctive, exemplary, and/or punitive relief.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A. Certification of the proposed Class by order pursuant to Fed. R. Civ. P. 23;

B. Designation of the Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C. Judgment in favor of the Plaintiffs and the Class Members as against the Defendant for each cause of action stated herein;

D. An award to the Plaintiffs and the Class Members for compensatory and punitive damages, including pre- and post-judgement interest;

E. An award of attorneys' fees and costs, including pre- and post-judgement interest as allowable by law;

F. An Order holding that the entrance of the aforementioned noxious Emissions upon the Plaintiffs' and Class's properties constitutes a nuisance;

G. An Order holding that Defendant was negligent in causing noxious Emissions to repeatedly invade and interfere with the Plaintiffs' and the Class's private residential properties;

H. An Order holding that the entrance of the aforementioned noxious Emissions upon the Plaintiffs' and Class's properties constitutes a trespass;

I. An award to the Plaintiffs and the Class Members for injunctive relief not inconsistent with the Defendant's state and federal regulatory obligations; and,

J. Such further relief, both general and specific, that this Honorable Court deems just and proper.

## JURY DEMAND

The Plaintiffs respectfully demands a trial by jury on all issues raised in this Complaint, pursuant to Fed. R. Civ. P. 38.

Date:  May 28, 2026                                  Respectfully submitted,

*/s/ Kevin Riechelson*

Kevin S. Riechelson
**COHEN & RIECHELSON**
3500 Quakerbridge Road, Suite 203
Hamilton, New Jersey, 08619
Tel: (609) 394-8585| Fax: (609) 394-8620
KRiechelson@crlawoffices.com
*Attorney for Plaintiffs*

*/s/ Steven D. Liddle*

Steven D. Liddle*
Laura L. Sheets*
Matthew Z. Robb*
**LIDDLE SHEETS P.C.**
975 E. Jefferson Ave.
Detroit, MI  48207
(313) 392-0015
sliddle@lsclassaction.com
lsheets@lsclassaction.com
mrobb@lsclassaction.com
*Pro Hac Vice Motions to be submitted*
*Attorneys for Plaintiffs*

28